UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

REGINO JOSEPH, an individual,
on behalf of himself and all others similarly situated,

       Plaintiffs,                                        **Collective Action**

v.

PACESETTER PERSONNEL SERVICE, INC.,
a Texas profit corporation;
PACESETTER PERSONNEL SERVICE OF
FLORIDA, INC., a Florida profit corporation;
FLORIDA STAFFING SERVICE, INC.,
a Florida profit corporation; and,
TAMPA SERVICE COMPANY, INC.,
a Florida profit corporation
each d/b/a PACESETTER;
PACESETTER PERSONNEL;
PACESETTER PERSONNEL SERVICE;
PACESETTER PERSONNEL SERVICES;
PACESETTER PERSONNEL SERVICES, LLC;
PPS; and/or FW SERVICES,

       Defendants.

_____/

**COLLECTIVE ACTION COMPLAINT**

Plaintiff, REGINO JOSEPH (hereinafter "Plaintiff"), by and through his undersigned

counsel, and on his own behalf and on behalf of other similarly situated current and former

employees of Defendants, hereby files the instant action pursuant to the Fair Labor Standards Act

of 1938, as amended 29 U.S.C §201 *et seq*., (hereinafter the "FLSA").

The instant action is filed as a proposed "opt-in" nationwide FLSA collective action

which includes both overtime and federal minimum wage claims against Defendants,

PACESETTER PERSONNEL SERVICE, INC., PACESETTER PERSONNEL SERVICE OF

FLORIDA, INC., FLORIDA STAFFING SERVICE, INC., and TAMPA SERVICE COMPANY, INC. (collectively hereinafter "Defendants" or "Pacesetter"). In support thereof, Plaintiff states as follows:

## OVERVIEW

1.     Plaintiff and all those similarly situated are current or former "unskilled" general laborers who were employed on "daily tickets" (this term will be explained in detail below) by Defendants throughout Florida and other states.[1]

2.     Defendants each and collectively are personnel staffing or "temporary labor" companies which supply general laborers on a temporary/long-term basis to third-party corporate and governmental entity clients.

3.     This two-count Complaint is brought on behalf of Plaintiff and all others similarly situated who worked for the Defendants and brings causes of action for:

Count I:     a proposed "opt-in" national collective action for the recovery of unpaid overtime wages pursuant to 29 U.S.C. § 216(b) of the FLSA, 29 U.S.C. § 201 *et seq.,* and;

Count II:     a proposed "opt-in" national collective action for the recovery of unpaid minimum wages pursuant to 29 U.S.C. § 216(b) of the FLSA, 29 U.S.C. § 201 *et seq.*;

4.     Plaintiff brings his FLSA overtime and minimum wage claims (Counts I and II) as a proposed 29 U.S.C. § 216(b) "opt-in" collective action and seeks to recover unpaid wages, unpaid overtime wages, liquidated damages, declaratory relief and reasonable attorneys' fees and

---

[1] The proposed class for this collective action **excludes** workers who worked exclusively for Defendants in Broward County, Florida, and are already Plaintiffs or Opt-in Plaintiffs in *Villarino, et al. v. Pacesetter Personnel Service, Inc., et al.*, Case No. 0:2020-cv-60192. The reasons for this exclusion are explained, *infra.*

costs on behalf of himself and all similarly situated employees who eventually opt in to the class and who worked for the Defendants <u>within the United States</u> (excluding Broward County, Florida) within the <u>three (3) years</u> preceding the filing of this action (the "Collective Action Class").

5.       Plaintiff knows of (and undersigned counsel currently represent) numerous other similarly situated individuals who are interested in opting into the collective class proposed via this action, who are similarly situated to Plaintiff, and who are interested in the creation of an FLSA collective action with Court-supervised notice of opt-in rights to all others similarly situated.

## JURISDICTION AND VENUE

6.       The jurisdiction of the Court over this action is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.       Venue is proper for the United States District Court for the Southern District of Florida because:

(a)      Plaintiff was employed in the Southern District of Florida by Defendants, which at all times material, conducted, and continue to conduct, substantial business in the Southern District of Florida; and

(b)      Additionally, venue lies pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred within the Southern District of Florida, and because Defendants are subject to personal jurisdiction there.

## PARTIES

8.       Plaintiff and those similarly situated to him are *sui juris* adult individuals who are

current or former employees of Defendants who worked for Defendants as general "unskilled" laborers employed on "daily tickets" within the three (3) years preceding the filing of this complaint.

9.      Plaintiff is currently a citizen of the State of Florida.

10.     Plaintiff has worked for the Defendants as a "daily ticket" general laborer in Miami-Dade County, Florida at various times within the last three (3) years.

11.     Undersigned counsel currently represent numerous other individuals similarly situated to Plaintiff.

12.     Many of these individuals worked for Defendants within the last three (3) years at one or more of Defendants' many locations throughout the state of Florida and outside Florida, including at Defendants' locations in Miami, West Palm Beach, Tampa, Orlando and Daytona.

13.     Defendant PACESETTER PERSONNEL SERVICE, INC.[2] is a Texas profit corporation with its corporate base of operations ostensibly located at 3203 West Alabama Street, Houston, Texas 77098 and which at all times relevant and currently conducts substantial business within this District and the State of Florida.

14.     Defendant PACESETTER PERSONNEL SERVICE OF FLORIDA, INC. is a Florida profit corporation with its corporate base of operations ostensibly located at 3203 West Alabama Street, Houston, Texas 77098 and which at all times relevant and currently conducts substantial business within this District and the State of Florida.

---

[2] Upon information and belief "[t]here are 38 companies in the Pacesetter Personnel Service, Inc. corporate family." [http://dnb.com/business-directory/company-profiles.pacesetter_personnel_ service_inc. 95396f9605caaae85c2595fe893083c1.html]

This lawsuit is intended to encompass the employees of all companies operated by Defendants and operating under the name "Pacesetter," to the extent they are similarly situated to the Plaintiff.

15.    Defendant, FLORIDA STAFFING SERVICE, INC., is a Florida profit corporation with its corporate base of operations ostensibly located at 3203 West Alabama Street, Houston, Texas 77098 and which at all times relevant and currently conducts substantial business within this District and the State of Florida.

16.    Defendant, TAMPA SERVICE COMPANY, INC., is a Florida profit corporation with its corporate base of operations ostensibly located at 3203 West Alabama Street, Houston, Texas 77098 and which at all times relevant and currently conducts substantial business within this District and the State of Florida.

17.    Currently and over at least the last three (3) years, all four (4) named corporate Defendants have had common ownership, common management, common branding, common pay and employment practices and policies, a common business purpose and model, interrelation between operations, and centralized control of labor relations. All three appear to do business under multiple names including but not limited to the following:

PACESETTER; PACESETTER PERSONNEL;

PACESETTER PERSONNEL SERVICE;

PACESETTER PERSONNEL SERVICES;

PACESETTER PERSONNEL SERVICES, LLC; PPS;

and/or FW SERVICES.

18.    Plaintiff reserves the right to amend his pleadings to include these or any other companies under which the Defendants may conduct business or which may be joint/integrated employers or companies engaged with the Corporate Defendants in a joint enterprise.

19.     At all times relevant, each Defendant constituted and are "employers" within the meaning of the FLSA and were the employer(s) of Plaintiff and other similarly situated employees in the various states in which they work and/or worked, including Florida.

20.     At all times relevant, each Defendant constituted an "employer" within the meaning of the FLSA.

21.     At all times relevant hereto, each Defendant was an enterprise engaged in commerce.

22.     At all times relevant hereto, each Defendant was an enterprise engaged in the production of good for commerce.

23.     At all times relevant Defendants collectively were and are corporate enterprises engaged in commerce or in the production of goods for commerce as defined in the FLSA, 29 U.S.C. 203 (r) and (s).

24.     At all times relevant hereto, the gross sales revenue of Defendants each was in excess of $500,000.00 per annum.

25.     At all times relevant hereto, Defendants' gross sales revenue was in excess of $500,000.00 per annum collectively.

26.     At all times relevant hereto, Defendants' gross revenue exceeded $40 million on an annual basis.

27.     At all times relevant hereto, Defendants simultaneously operated in two (2) or more states.

28.     At all times relevant hereto, Defendants operated simultaneously in Florida, Texas, and Georgia.

29.     Defendants acknowledge that "[f]or over 25 years, Pacesetter has provided [its] services to wide range of businesses throughout the United States…"  [http://pps.com/about/]

30.     At all times relevant hereto, Defendants had at least 26 locations operating throughout Florida, Texas, and Georgia simultaneously.  *See* http://pps.com/locations.

31.     At all times relevant hereto, each Defendant simultaneously operated in two (2) or more states.

32.     At all times relevant hereto, each Defendant had two or more employees.

33.     At all times relevant hereto, Defendants collectively had two or more employees.

34.     At all times relevant hereto, each Defendant had two or more employees who handled goods and materials which had traveled in interstate commerce, on a daily basis, including shovels, rakes, brooms, work boots, PPE, gloves, safety harnesses, goggles, hardhats, and other construction equipment and tools.

35.     At all times relevant hereto, Defendants had two or more employees who handled goods and materials which had traveled in interstate commerce on a daily basis, including boots, PPE, gloves, goggles, helmets, and other construction equipment, materials and tools.

36.     At all times relevant hereto, Defendants constituted and continue to constitute a joint enterprise and/or integrated enterprise, as defined by the FLSA.

37.     Defendants operate under a common scheme, plan, organization, branding, with the same principals and are otherwise intertwined or interdependent such that they create a common employer under the law and the total revenues for each would be included to determine whether they are an enterprise engaged in interstate commerce and subject to the FLSA. Defendants exist for the common business purpose of providing temporary, daily, and contract labor to their corporate, institutional and governmental clients.

38.     Defendants each and jointly hold themselves out as "Pacesetter" to the general public.

39.     Defendants share common management and executive officers.

40.     Kenneth Joekel is the President of all of the Defendants.

41.     Eric Shepler is the Vice President of all of the Defendants.

42.     Marc Plotkin is the executive vice president for Defendants and oversees all Defendants' locations employing daily ticket workers in all states in which Defendants operate.

43.     Defendants utilize common corporate and back office functions and personnel, including operations, billing, human resources, personnel, business development, recruiting, legal, safety, information technology, accounting, payroll, marketing, government relations, and many other functions and departments.

44.     At all times relevant hereto, Defendants shared a single integrated corporate website, with the URL http://www.pps.com.

45.     At all times relevant hereto, Defendants utilized a single toll-free telephone number, (855) Call-PPS.

46.     At all times relevant hereto, Defendants utilized a common email to solicit new business: info@pps.com.

47.     Defendants share a single corporate headquarters located in Houston, Texas.

48.     Defendants, as part of their business, transact business in interstate commerce including transacting business with large corporate and governmental entities in multiple states on a regular and ongoing basis.

49.     At all times relevant, Defendants provided personnel services or general laborers to various companies or clients that are in various states across the Southeast United States, including at least in the states of Florida, Alabama, Georgia, and Texas.

50.     At all times relevant, Defendants purchased materials, equipment, products, and supplies from vendors, wholesalers, dealers, and suppliers from out-of-state on a regular basis, and received such materials, equipment, products, and supplies in interstate commerce.

51.     At all times relevant, Defendants transacted and conducted business across state lines, in multiple states.

## GENERAL FACTUAL ALLEGATIONS

52.     Plaintiff is a *sui juris* adult individual who currently resides within Miami-Dade County, Florida. He worked for Defendants in the Miami-Dade County area at various times within the three (3) years preceding the filing of this action.

53.     Pacesetter, though its various corporate entities and d/b/a entities, is a large personnel staffing or "temporary labor" company operating in several states and in the business of employing general "unskilled" laborers and deploying them to work for third-party corporate and governmental entity clients across the southeast United States, including in the states of Florida, Georgia, and Texas. These clients include large general contractors, construction companies, airports, casinos, sporting and concert venues, municipalities and other governmental entities.

54.     Plaintiff and many others similarly situated worked on hundreds of construction projects and other job sites, as assigned by Defendants.

55.     Pacesetter has dozens of "worker reporting" or "labor hall" locations throughout the southeastern United States, including 17 locations within the state of Florida, including Miami, Fort Lauderdale, Fort Myers, Orlando, West Palm Beach, Tampa, Daytona Beach, Pensacola and

Jacksonville.

56.     All of Pacesetter's worker reporting/labor hall locations operate in a substantially similar manner, as described below.

**Plaintiff's Typical Workday/ Week**

57.     The following paragraphs describe the typical workday/workweek experienced by Plaintiff during his employment with Defendants. His experiences are representative of and nearly identical to the experiences of thousands of similarly situated current and former Pacesetter workers in Florida and other states.

58.     At various times during his employment with Defendants in Miami-Dade County, Plaintiff reported to Defendants' labor hall located at 1069 West Flagler Street, Miami, Florida 33130 early in the morning, often between 4 and 5 a.m.

59.     Upon arriving, Plaintiff would then "log in" using a wall-mounted tablet. (The log-in time is not used for tracking an employee's daily time worked or for calculating pay. The purpose of the log-in appears to be simply tracking which employees report for work each morning).

60.     After logging in, Plaintiff would be informed by management of that day's work assignment, job site and instructions regarding the tasks to be done that day, and given a "ticket" to take to the job site.

61.     Plaintiff would then be issued employer-provided tools, protective/ safety gear and/or equipment. The exact combination of gear and clothing varied depending upon the work being done that day, but often the gear would include googles/ safety glasses, gloves, a reflective vest, a safety harness, and/or a hard hat.

62.     Similarly, the tools or implements issued on a given day depended on the work being done that day, but often could include a shovel, pick axe, sledgehammer, rake, broom, flags,

other basic hand tools and/or various cleaning supplies.

63.     Plaintiff was then advised of that day's employer-required and coordinated transportation to and from the job site. Usually, Plaintiff would either be assigned to carpool with other workers or ride on one of Defendants' large passenger vans. On some days, Defendants required Plaintiff and others similarly situated to use other forms of transportation to and from jobsites, such as public busses or ride-sharing services such as Uber or Lyft. Plaintiff and others similarly situated were generally not permitted to drive their own vehicles by themselves with no passengers from the labor hall(s) to the job sites and back again.

64.     Plaintiff and other similarly situated workers were required to take employer-coordinated/controlled/approved/provided transportation to and from the job site and were **not** permitted to drive their own vehicles to job sites unless the trip was part of a carpool arrangement involving co-workers and approved and overseen by Defendants.

65.     Immediately following receipt of his daily assignment, Plaintiff was often required to wait at the labor hall for an hour or more, prior to his transport to the job site. This wait time, which was uncompensated, was primarily for the benefit of Defendants.

66.     Once directed to do so, Plaintiff was then required to take the employer-provided and coordinated transportation out to the job site.

67.     While the work tasks varied, they were all unskilled labor tasks which did not require any specialized training, experience or certifications.

68.     At construction sites, tasks included debris clean up, trash removal, demolition, and landscaping. At other job sites tasks included trash removal, moving, landscaping, janitorial, cleaning, assembly, warehousing, unloading and loading, freight handling, packaging, or "set up" of various items for events, such as tables, chairs, canopies, garbage cans and other items.

69.     At the conclusion of their work at a given job site, Plaintiff and those similarly situated were then again required to take the employer-coordinated/ provided transportation back to the labor hall in order to clean and return all their employer-issued safety gear, tools and equipment, along with their daily job "ticket."

70.     Defendants required daily ticket workers to bring back the daily tickets at the end of each day because the daily tickets often had directions/ instructions regarding the next day's tasks and worker requirements from the job site client/ customer.

71.     If Plaintiff or others similarly situated failed to take the employer-required transportation back to the labor hall at the end of their work day, they were at risk of non-payment for that day and were subject to reprimand and fines for failing to return the tools/equipment/safety gear Defendants issued to them at the start of their shifts.

72.     Once they returned to the labor hall via the employer-required and coordinated transportation, Plaintiff and others similarly situated cleaned/returned their employer-issued tools/safety gear and/or equipment, turned in their daily tickets and they were then given their paycheck and pay stub for that workday.

73.     Defendants and workers commonly refer to the above-described typical workday as a worker being on a "daily ticket," a reference to Plaintiff and others similarly situated being paid at the end of each workday and being required to report to the labor hall at the beginning and end of each day for a paper daily "ticket" which detailed that day's work assignment.[3]

---

[3] Defendants constitute a very large labor staffing company and, in addition to employing thousands of "unskilled" general laborers like Plaintiff and others similarly situated, do in fact employ many skilled workers and/or tradespeople who are not required to report to any labor hall on a daily basis. This action is not intended to include such skilled tradespeople employed by Defendants and Plaintiff does not contend that such workers are similarly situated. Rather, Plaintiff seeks to pursue the instant action on behalf of general laborers employed by Defendants on "daily tickets," which constitute the group of workers Plaintiff believes "similarly situated" to him.

74.     Defendants failed to credit/compensate Plaintiffs for any hours worked other than those spent working on their daily assigned jobsite.

75.     Defendants failed to keep accurate records of Plaintiff's time worked each day/week and instead relied on their client's representative at each job site to track the time that each daily ticket worker spent working at the respective client's jobsite each day.

76.     The amount of hours shown on a typical daily pay stub was virtually always an under-reporting of the actual amount of time Plaintiffs and others similarly situated worked.

77.     Each day's paystub under-reported and under-credited hours worked due to the fact that Plaintiff and others similarly situated were sometimes on the job sites for longer than what the pay stub indicated, **_and_** Defendants did not pay Plaintiff, or those similarly situated for the time they spent travelling to and from the job sites or the time spent at the labor hall waiting and being issued and then returning tools, safety gear, daily tickets and other items.

78.     The time Plaintiff and others similarly situated spent travelling from the labor halls to the job sites was an integral and required part of their job duties and constitutes FLSA-compensable time, and was principally for the benefit of Defendants.

79.     At the conclusion of each workweek, Defendants paid Plaintiff and others similarly situated employees time-and-a-half overtime pay, only to the extent such employee's cumulative paystubs for the workweek credited more than 40 hours worked for the week.

80.     With respect to Plaintiffs and those similarly situated, Defendants did not and still do not have in place a system for accurately measuring and tracking the actual time worked each day/week.

81.     Plaintiff and others similarly situated are required by Defendants to report to the

labor hall(s) each morning to start their workday and to return to them at the end of each workday for several reasons.

82.     Plaintiff and others similarly situated are required by Defendants to report to the labor hall(s) each morning to start their workday so that Defendants may issue them the tools, equipment, safety gear, and/or instructions required for each day's job.

83.     The tools and safety gear issued to Plaintiff and those similarly situated, which they are required to transport to and from the job site they are assigned each day are integral to the work Plaintiff performs each day, and the daily work cannot be performed without such tools and safety gear.

84.     Plaintiff and others similarly situated were/ are required to return to the labor hall at the end of each workday in order to return Defendants' tools, equipment, safety gear and the daily tickets.

85.     Plaintiffs and others similarly situated were and are also required by Defendants to report to the labor hall(s) each morning and to return to them at the end of each workday, because Defendants require their workers to utilize employer-coordinated and approved transportation to and from job sites.

86.     At all times relevant hereto, workers, including Plaintiff were generally **not** permitted to drive their own vehicles to job sites unless the trip was part of a Defendants' approved and overseen carpool arrangement involving co-workers.

87.     Plaintiff and others similarly situated were required to take employer-provided and coordinated transportation, in part, because Defendants promised and advertised to its clients that daily ticket workers would be delivered to and from job sites, and would not be individually commuting to and from said job sites.

88.     In fact, one of the unique "perks" by which Defendants secures its contracts with its customers is by promising to its customers that Defendants will transport the workers to and from the jobsites, and workers will **not** be arriving or leaving job sites in their own individual vehicles.

89.     As Defendants' website explains:

> **General Labor**
> WORKLOADS FLUCTUATE. DEADLINES LOOM. STAFFING FALLS SHORT.
>
> Whatever your situation, the answer is the same: reliable, affordable temporary labor. Every day, Pacesetter recruits, dispatches and transports workers for temporary general labor assignments to businesses throughout the southern United States. Through our comprehensive employee transport system, Pacesetter supplies dependable, timely general labor workers directly to your location.
>
> Whether you need one worker for one day or one hundred workers indefinitely, Pacesetter can help. Most of our offices are open 24 hours a day, 7 days a week with a fleet of transport vehicles to ensure the timely arrival of workers to onsite projects—a benefit unmatched by competitors.

*https://pps.com/general-labor/*

90.     Thus, with respect to the employer-coordinated transportation, on any given workday, Plaintiff and others similarly situated were either passengers on Defendants' vans, or were carpooling with co-workers. On less frequent occasions, Plaintiff and others similarly situated were required by Defendants to take public busing or ride-sharing services to and from job sites.

91.     Defendants failed to pay Plaintiff and those similarly situated for time spent working prior to reaching their assigned work site each day and after leaving their assigned work site each day, despite the fact that such time was compensable work time under the FLSA and Florida law.

92.     On a typical workday, Defendants would charge Plaintiff and others similarly situated a $3 fee per day ($1.50 each way) for the required transportation to and from the job site, whether that transportation was a ride on one of Defendants' passenger vans or in a carpool with a

co-worker/ driver.

93.     If a worker had their own personal vehicle and opted to be a carpool "driver," Defendants would designate that worker as a driver and assign co-workers to his/her vehicle for carpooling.

94.     If a worker was a carpool driver of other co-workers, he/she would not be charged the $3 transportation fee, but instead would receive $3 per passenger for the day.

95.     The implementation, allocation, oversight and payment of these transportation fees was completely controlled, overseen and implemented by Defendants, and Defendants either subtracted from (passengers) or added to (drivers) workers' daily paychecks.

96.      On at least some days, Defendants charged Plaintiff and others similarly situated *more* than $3 per day in fees for transportation to and from job sites.

97.     As a result of the "transportation fees" charged by Defendants and other impermissible charges implemented by Defendants, the pay of Plaintiff and others similarly situated fell below the applicable minimum wage in many workweeks.

98.     Defendants' policy whereby they charge daily ticket workers "transportation fees" is illegal and constitutes a kick-back in violation of the FLSA.

99.     The "transportation fees" charged by Defendants and other impermissible charges made by Defendants, constitute illegal kick-backs under the FLSA and precluded the possibility that Plaintiff and those similarly situated would receive their FLSA-mandated wage and overtime pay "free and clear."

100.     Plaintiff and others similarly situated ordinarily and regularly worked well over 40 hours per week for Defendants, and were not properly compensated for all overtime hours worked, as a result of: (a) Defendants' systematic failure to credit/pay Plaintiff for all hours

worked each workweek; (b) Defendants' systematic failure to pay Plaintiff his regular rate of pay "free and clear" of impermissible deductions; and (c) Defendants' systematic failure to pay Plaintiff at a rate equal to or great than the applicable minimum wage.

101.    Additionally, Defendants regularly and routinely shorted the overtime pay of Plaintiff and others similarly situated by improperly calculating the employees' weekly overtime pay rates in violation of the FLSA and 29 C.F.R. §778.115.

102.    Plaintiff and others similarly situated often were paid different hourly rates on different days within the same workweek.

103.    Despite the requirements of 29 C.F.R. §778.115, Defendants deliberately violated this regulation by often calculating the overtime rate using the lowest hourly rate paid during a given workweek in weeks in which workers worked at two or more different pay rates in the same workweek.

104.    Upon information and belief, Defendants engaged in this practice (using a lower hourly rate than the required weighted average in workweeks where employees' hourly pay rates fluctuated) as a deliberate and illegal cost savings measure that, when implemented over years and across thousands of workers, resulted and continues to result in a significant underpayment of wages to Defendants' workers.

105.    Furthermore, the U.S. Department of Labor-approved poster employers are required to post to inform employees of their rights under the FLSA was not posted and/or kept current and, therefore the applicable statute of limitation should be equitably tolled as to Plaintiffs and those similarly situated. *See, e.g., Cruz v. Maypa,* 773 F.3d 138, 147 (4th Cir. 2014) (extending failure-to-post tolling in the ADEA context to the FLSA); *Yu G. Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) ("Failure to provide required notice of the governing legal requirements may

be a sufficient basis for tolling."); *Kamens v. Summit Stainless, Inc.,* 586 F. Supp. 324, 328 (E.D. Pa. 1984) ("An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations.").

106.    Defendants failed to properly pay Plaintiff and all other similarly situated employees proper overtime compensation. The records reflecting this, to the extent any exist and are accurate, concerning the number of hours worked and amounts paid to Plaintiff and other similarly situated employees, should be in the possession and custody of Defendants. Thus, Plaintiff is unable to determine and state the exact amount of damages due at this time.

## <u>COLLECTIVE ACTION REPRESENTATION ALLEGATIONS</u><br><u>(as to Counts I and II)</u>

107.    Plaintiff and those similarly situated to them are all "unskilled" general laborers who were employed by Defendants at various times during the <u>three (3) years</u> preceding the filing of this action and performed substantially the same or similar job duties as one another regardless of the location or job site at which they worked.

108.    Plaintiff and those similarly situated were subjected to the same pay practices and policies detailed herein. Thus all potential opt-in plaintiffs are owed minimum wages and overtime wages for the same reasons as Plaintiff.

109.    Plaintiff and those similarly situated are/were employees of Defendants' who were employed on "daily tickets" during workweeks worked during the three (3) years preceding the filing of this action.

110.    These policies and/or practices were applied to Plaintiff as well as the proposed class members. Application of these policies and/or practices did not depend on the personal circumstances of Plaintiff or others similarly situated nor on the location at which they worked

for Defendants.  Rather, the same policies and/or practices which resulted in the non-payment or

under-payment of overtime wages to Plaintiff applied to all class members.

Accordingly, the members of the minimum wage collective are properly defined as:

> **All hourly-paid "daily ticket" general labor employees who have worked for Pacesetter at any time within the three (3) years preceding October 6, 2021, up to the present.**

The members of the overtime collective are properly defined as:

> **All hourly-paid "daily ticket" general labor employees who have worked for Pacesetter at any time within the three (3) years preceding October 6, 2021, up to the present, who worked in excess of 40 hours in a workweek in one or more workweeks.**

111.    The proposed collectives **exclude** workers who worked **exclusively** for

Defendants out of any labor hall in Broward County (many of whom are currently plaintiffs in

the case of *Villarino et al. v. Pacesetter Personnel Service, Inc. et al.*, Southern District of

Florida Case No: 20-60192 (J. Singhal)).

112.    Defendants knowingly, willfully, or with reckless disregard carried out an illegal

pattern or practice of failing to pay minimum wages and overtime compensation with respect to

Plaintiff and the proposed class members.

113.    Defendants did not act in good faith or reliance upon any of the following in

formulating their pay practices with respect to Plaintiff and those similarly situated: (a) case law,

(b) the FLSA, 29 U.S.C. § 201, *et seq.*, (c) Department of Labor Wage & Hour Opinion Letters

or (d) the Code of Federal Regulations.

114.    During the relevant period, Defendants violated §7(a)(1) and §15(a)(2), by

employing employees in an enterprise engaged in commerce or in the production of goods for

commerce within the meaning of the FLSA as aforesaid, for one or more workweeks without

compensating such employees for their work at a rate of at least the time-and-one-half for all hours worked in excess of 40 hours in a work week.

115.    Defendants have acted willfully in failing to pay Plaintiff and the potential class members in accordance with the law.

116.    At all times relevant, Defendants failed to maintain accurate records of the actual start time, stop time, total hours worked each day, and total number of hours worked each week by Plaintiff and the other similarly situated employees for each and every workweek within the three (3) year statute of limitations period.

117.    Plaintiff has retained the undersigned legal counsel to prosecute this action on his behalf and on behalf of all other similarly situated employees, and have agreed to pay undersigned counsel a reasonable fee for counsel's work and representation.

118.    Undersigned counsel will be entitled to recover reasonable attorneys' fees and costs if either Plaintiff and/or any other similarly situated employees prevail in this action, pursuant to the FLSA.

### COUNT I
### VIOLATIONS OF 29 U.S.C. §§ 207, 216(b)
### (OVERTIME COMPENSATION)

119.    Plaintiff reincorporates, re-avers and re-adopts all Paragraphs 1-119 of this Complaint as if fully set forth herein.

120.    Plaintiff and those similarly situated employees are/were entitled to be paid, pursuant to the FLSA, at the rate of time and one-half of their effective regular rate for the hours that they worked in excess of forty (40) hours in any workweek.

121.    Additionally, they are/were entitled to be paid their regular hourly rate for all straight time hours they worked for Defendants, in all weeks in which they worked over forty (40)

hours in a workweek.

122.   Due to intentional, willful, and unlawful acts of Defendants, Plaintiff and others similarly situated have suffered damages in lost compensation for the time they worked over forty (40) hours per week without receiving overtime compensation.

123.   During their employment with Defendants, Plaintiff and those similarly situated employees were not paid all overtime compensation due under the FLSA.

124.   Defendants knew their failure to do so was in violation of the FLSA.

125.   As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiff and those similarly situated employees all overtime compensation due, Plaintiff and those similarly situated employees have suffered damages, including unpaid straight time, unpaid overtime wages, liquidated damages, interest, reasonable attorneys' fees and costs.

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated, move this Honorable Court for an order conditionally certifying this case as a collective action and permitting notice to issue pursuant to 29 U.S.C. § 216(b); and seek an eventual entry of a judgment against Defendants:

a.   Declaring that Defendants have violated the overtime wage provisions of the FLSA;

b.   As to Plaintiff and others similarly situated:

i.   Awarding overtime compensation in amounts to be calculated;

ii.   Awarding liquidated damages in an equal amount to the overtime wages awarded;

iii.   Declaring that the statute of limitations should be extended to three (3) or more

years and/or that the statute of limitation be tolled as appropriate;

      iv.     Awarding reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

      v.     Awarding post-judgment interest; and

      vi.     Ordering any other and further relief this Court deems to be just and proper.

## COUNT II
## VIOLATIONS OF 29 U.S.C. §§ 206, 216(b):
## (MINIMUM WAGES)

126.    Plaintiff reincorporates, re-avers and re-adopts all Paragraphs 1-119 of this Complaint as if fully set forth herein.

127.    Plaintiff and those similarly situated employees are/were entitled to be paid the applicable minimum wage for each workweek that they worked for Defendants.

128.    Due to intentional, willful, and unlawful acts of Defendants, Plaintiff and others similarly situated have suffered damages in lost compensation for the time they worked for Defendants but were not paid the applicable minimum wage.

129.    Defendants' failure to pay Plaintiff and others similarly situated at least the applicable minimum wage for all workweeks is a violation of 29 U.S.C. §206.

130.    Defendants did not have a good faith basis for their failure to pay Plaintiffs and those similarly situated employees the applicable minimum wage, and in fact knew their failure to do so was in violation of the FLSA.

131.    As a result of Defendants' intentional, willful and unlawful acts in refusing to pay Plaintiffs and those similarly situated employees complete minimum wages due, Plaintiff and those similarly situated employees have suffered damages, including unpaid minimum wages, liquidated damages, interest, reasonable attorneys' fees and costs.

132.    As a result of Defendants' willful violations of the minimum wage requirements of

the FLSA, Plaintiff and those similarly situated employees are entitled to recover liquidated damages.

**WHEREFORE,** Plaintiff, on behalf of himself and those similarly situated, move this Honorable Court for an order conditionally certifying this case as a collective action and permitting notice to issue pursuant to 29 U.S.C. § 216(b); and seek an eventual entry of a judgment against Defendants:

a.      Declaring that Defendants have violated the minimum wage provisions of the FLSA;

b.      As to Plaintiff and others similarly situated:

    i.      Awarding minimum wage compensation in amounts to be calculated;

    ii.     Awarding liquidated damages in an equal amount to the wages awarded;

    iii.    Declaring that the statute of limitations should be extended to three (3) or more years and/or that the statute of limitation be tolled as appropriate;

    iv.     Awarding reasonable attorneys' and paralegal fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

    v.      Awarding post-judgment interest; and

    vi.     Ordering any other and further relief this Court deems to be just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and others similarly situated and on behalf of prospective collective action members, demands a trial by jury on all issues so triable.

**DATED:**      October 7, 2021                Respectfully filed,
                Boca Raton, Florida

                                          BY:   *s/Dion J. Cassata*
                                                Dion J. Cassata, Esq.
                                                Fla. Bar No. 672564
                                                *dion@cassatalaw.com*

                                          CASSATA LAW, PLLC
                                          Boca Crown Centre
                                          7999 North Federal Highway, Suite 202
                                          Boca Raton, Florida 33487

                                          Telephone:   (954) 364-7803


                                          BY: *s/Andrew R. Frisch*
                                                Andrew R. Frisch, Esq.
                                                Fla. Bar No. 27777
                                                *afrisch@forthepeople.com*

                                          MORGAN & MORGAN, P.A.
                                          8151 Peters Road, 4th Floor
                                          Plantation, FL 33324

                                          Telephone:     (954) WORKERS
                                          Facsimile:     (954) 327-3013

                                          *Counsel for Plaintiff and Collective*